IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

STEPHEN JAMES ENGLEMAN                                                                         PLAINTIFF

v.                                    Civil No. 05-5132

SHERIFF KEITH FERGUSON;
DEPUTY MURRAY; and
KEITH SMITH, Chief of Police,
Gentry Police Department                                                                        DEFENDANTS

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

The plaintiff filed this civil rights action pursuant to 42 U.S.C. § 1983 on July 27, 2005. He proceeds pro se and in forma pauperis.

On June 28, 2006, a summary judgment motion (Doc. 27) was filed by Sheriff Keith Ferguson and Deputy Murray. On July 18, 2006, a motion for summary judgment (Doc. 30) was filed by Chief of Police Keith Smith. To assist plaintiff in responding to the summary judgment motions, a questionnaire was propounded (Doc. 36).

On February 21, 2007, plaintiff's response to the questionnaire was filed (Doc. 56).[1] Plaintiff also filed a supplemental response to the summary judgment (Doc. 61). The summary judgment motions are before the undersigned for issuance of this report and recommendation.

---

[1] In his response, plaintiff states he never received the summary judgment motion. Although plaintiff has written the court at various times requesting copies of documents, he has not requested copies of the summary judgment motions. Moreover, he did not request copies of the motions when the court's order and summary judgment questionnaire were sent to him. The plaintiff did not request an extension of time to respond to the motion. The court also notes that no mail has been returned to the court as undeliverable. The first summary judgment questionnaire was sent to the plaintiff on November 15, 2006 (Doc. 36). After the undersigned recommended that the case be dismissed based on plaintiff's failure to prosecute (Doc. 40), plaintiff filed objections and the motions were re-referred to the undersigned. A questionnaire was again sent to the plaintiff (Doc. 53). Plaintiff filed the response to the questionnaire (Doc. 56) and a supplemental response (Doc. 61) both of which have been considered by the court.

-1-

AO72A
(Rev. 8/82)

## BACKGROUND

On March 23, 2004, a warrant was issued for Engleman's arrest by a Bentonville District Court Judge for failure to comply. *Ferguson's Exhibit* 1 at page 2.[2] The warrant identified Engleman by name, social security number, date of birth, photograph, and listed his address as 24512 Van Fleet Road, Siloam Springs, Arkansas. *Id.*

On January 11, 2005, the Benton County Sheriff's Office received a call concerning a "prowler" at 24512 Van Fleet Road, Siloam Springs, Arkansas. *Ferguson's Exhibit* 1 at page 5. The caller identified himself as Steve England. *Id.* The caller advised there were three people, possibly two males and one female, messing around his house. *Id.* The caller stated the prowlers had tried to get in his door. *Id.* The caller stated he could see no vehicle. *Id.* The caller advised that the prowlers were at the back of the house. *Id.* The caller gave directions to the home as Hwy. 43 north of Siloam Springs, west on Van Fleet. *Id.*

Plaintiff maintains that he did not give a false name. *Resp.* at ¶ 4(A). Instead, plaintiff states he identified himself as Steve Engleman. *Id.* Deputy Murray and a Gentry Police Officer responded to Engleman's call about a prowler. *Id.* at ¶ 4(B). Engleman indicates there were also two other Benton County deputies present. *Id.*

According to defendants, Engleman's Father was present at 24512 Van Fleet Road and gave the officers permission to search the house for Engleman. *Ferguson's Exhibit* 1 at page 5. Engleman states his Father kept telling the officers that Engleman was in the house. *Resp.* at ¶ 4(C). Engleman doesn't know if his Father gave them permission to search the house for him.

---

[2] The court will refer to the exhibits attached to the summary judgment motion filed by Sheriff Ferguson and Deputy Murray as "Ferguson's Exhibit" followed by the exhibit number and page number.

*Id.* At the time of the search, Engleman was hiding in a closet inside the garage. *Id.* at ¶ 4(D).

Engleman was arrested on the warrant issued on March 23, 2004, for failure to comply. *Ferguson's Exhibit* 1 at page 4. Engleman maintains he was taken by force, against his will, across the state line into Arkansas. *Resp.* at ¶ 5. While defendants indicate Engleman was arrested at 24512 Van Fleet Road, Siloam Springs, Arkansas, *Ferguson's Exhibit* 1 at page 4, Engleman contends this is simply a mailing address and he was actually arrested at Route 1, Colcord, Oklahoma, *Resp.* at ¶ 6.

Engleman was arrested on January 11, 2005, at 4:30 a.m. *Ferguson's Exhibit* 1 at page 4. He was booked into the Benton County Detention Center at approximately 5:16 a.m. *Id.* Upon intake at the Benton County Sheriff's Office Engleman gave his address as 24512 Van Fleet Road, Siloam Springs, Arkansas. *Id.* Engleman indicates he told detention center officials that this was a mailing address not a physical address. *Resp.* at ¶ 8.

Engleman was asked if he had an Arkansas driver's license or a vehicle registered in Arkansas. *Resp.* at ¶ 10. Engleman replied that he had not had a driver's license since 1992 and hasn't had a vehicle since 2001. *Id.* He also indicated that he does not vote. *Id.*

Engleman was the person who placed the call to 911 about a prowler on his Father's property. *Resp.* at ¶ 12. His Father's telephone number was 479-524-4056. *Resp.* at ¶ 13. Engleman maintains the property including the house is located in the State of Oklahoma. *Resp.* at ¶ 14 & ¶ 16.

Engleman does not contend Sheriff Ferguson was present during the arrest or when he was booked into the Benton County Detention Center (BCDC). *Resp.* at ¶ 17 (without knowledge to agree or disagree). Prior to Engleman's arrest, he attempted to hide from the

officers and resisted their efforts to arrest him. *Id.* at ¶ 22. When the officers saw Engleman fleeing towards the back of the garage, he refused to comply with the officers' commands. *Id.* at ¶ 23.

Officers attempted to apprehend Engleman and in doing so sprayed him with pepper spray. *Resp.* at ¶ 17 & ¶ 24. Engleman was then taken to the ground and handcuffed. *Id.* at ¶ 24.

Deputy Murray was present but did not spray Engleman. *Id.* at ¶ 20. However, Engleman maintains Murray did not have any jurisdiction in the State of Oklahoma. *Id.* at ¶ 19. Murray transported Engleman to the BCDC. *Id.* at ¶ 25.

Once at the BCDC, Engleman had access to running water. *Resp.* at ¶ 21. Engleman suffered no medical injury. (Doc. 58, Exhibit A-1 at No. 4).

The Gentry Police Manual allows officers to travel outside of the Gentry city limits only in a limited number of circumstances. *Smith's Exhibit* A-2.[3] Gentry police officers are not given authority to travel into other states to make arrests. *Id.* at A-2 & A-3. The Gentry Police Department's use of force policy is that officers may use only the amount and degree of force that is reasonably necessary to protect life and property. *Smith's Exhibit* A-1.

Engleman does not know which Gentry police officer was present during his arrest on January 11, 2005. *Resp.* at ¶ 30. However, he believes Chief Keith Smith should be liable for his officers. *Id.* at ¶ 33.

In his supplemental response to the summary judgment motion, Engleman points out that

---

[3]The court will refer to the exhibits attached to the summary judgment motion filed by Chief Keith Smith as "Smith's Exhibit" followed by the appropriate number.

he was arrested in the Fall of 2003 by two Benton County deputies at his Father's house. He notes that the charges were ultimately dropped because it was confirmed that the property was located in Oklahoma.

Engleman refers the court to the documents he filed with the court as supplements to his complaint (Doc. 13). These documents indicate Engleman was arrested on September 27, 2003, and charged with domestic battery 3, possession of drug paraphernalia, failure to comply, failure to appear, terroristic threatening, and false imprisonment. With the exception of the failure to appear and failure to comply charges, the remaining charges were ultimately dismissed in January of 2004. It appears the dismissal was based on the fact that the actions on which the charges were based took place in Oklahoma. The attached documents indicate Engleman's attorney had confirmed with Ann Engleman that the farms were on the Oklahoma side of the line.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical

AO72A
(Rev. 8/82)

doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

## DISCUSSION

Engleman contends his constitutional rights were violated when he was arrested in the State of Oklahoma, physically assaulted during the arrest, and then transported to the State of Arkansas. As noted above, the court has pending before it two summary judgment motions. We will address each motion separately.

### *Summary Judgment Motion filed by Keith Smith*

Gentry Police Chief Keith Smith moves for summary judgment contending first that there was no violation of the plaintiff's constitutional rights. If a violation did occur, Smith contends there is no basis on which he can be held liable. Finally, with respect to the excessive force claim, Smith contends it fails as a matter of law since Engleman suffered no actual injury.

Even if we assume for purposes of Smith's motion that Engleman's arrest was unconstitutional and/or that excessive force was used against him, there is nevertheless no basis on which Smith can be held liable. A claim of deprivation of a constitutional right cannot be based on a respondeat superior theory of liability. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). In other words, Smith cannot be held liable merely because he employed some unidentified officer who allegedly violated Engleman's constitutional rights.

There is no allegation that Smith was involved in any way in the actions taken by the

AO72A
(Rev. 8/82)

officers during Engleman's arrest, was involved in the decision to arrest Engleman and transport him to the BCDC, was involved in the use of force, or was even aware of the arrest until after the fact. *See e.g., Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995)(§ 1983 liability requires personal involvement or an allegation that the supervisor had knowledge of the unconstitutional conduct and turned a blind eye to it); *Fruit v. Norris*, 905 F.2d 1147, 1151 (8th Cir. 1990)(supervisors not liable under respondeat superior theory, supervisor must be personally involved in, deliberately indifferent to, or tacitly authorize the constitutional violation).

Further, Engleman has not alleged that Smith's failure to train or supervise officers resulted in the constitutional violation or that the Gentry Police Force operated pursuant to a policy or custom that violated his constitutional rights. *See e.g., Johnson v. Blaukat*, 453 F.3d 1108, 1113 (8th Cir. 2006)("Supervisors can be individually liable if they directly participate in a constitutional violation or if they failed to supervise and train officers."); *Pietrafeso v. Lawrence County*, 452 F.3d 978, 982 (8th Cir. 2006)("A county is liable [under § 1983] if an action or policy itself violated federal law, or if the action or policy was lawful on its face but led an employee to violate a plaintiff's rights and was taken with deliberate indifference as to its known or obvious consequences.")(citation omitted). Thus, Engleman's claims against Smith are subject to dismissal.

### *Summary Judgment Motion File by Sheriff Keith Ferguson and Deputy Murray*

Sheriff Keith Ferguson and Deputy Murray move for summary judgment on the grounds that plaintiff suffered no constitutional deprivation. They point out the plaintiff called the Benton County Sheriff's Office to report a prowler. In doing so, Engleman provided the dispatcher with an Arkansas address. When officers arrived they were notified there was an

outstanding arrest warrant for Engleman that had the same Arkansas address he had provided to the dispatcher. Defendants maintain the deputies on the scene had a good faith and reasonable belief that they were within the State of Arkansas. They point out the plaintiff was taken to the BCDC and released six hours later.

The Fourth Amendment of the United States Constitution protects against unreasonable searches and seizures. U.S. Const. Amend. 4. This includes the right to be free from arrest without probable cause. In this case, a warrant had been issued for Engleman's arrest. Arrest pursuant to a valid warrant normally establishes probable cause for arrest. *Luckes v. County of Hennepin*, 415 F.3d 936, 938 (8th Cir. 2005). The reasonableness of a search or seizure under the Fourth Amendment is measured in objective terms by examining the totality of the circumstances. *See e.g., United States v. Mendoza*, 281 F.3d 712, 718 (8th Cir. 2002).

Here, Engleman does not dispute the validity of the arrest warrant. Nor does he dispute the fact that the police were at the property in response to his report of a prowler. Rather, Engleman contends the officers were without jurisdiction to arrest him because he was physically in Oklahoma at the time the arrest was made. He maintains the officers were told they had no jurisdiction to arrest him or transport him to the BCDC because they were in Oklahoma. He also maintains they should have been aware of the fact that the property was located in Oklahoma since criminal charges that had been filed against him in Benton County in 2003 were dismissed because the actions forming the basis of the charges occurred on the property which was at the time shown to be in Oklahoma. Interestingly, Engleman offers no explanation for why he summoned the Benton County police to the property when he believed there was a prowler present instead of calling the appropriate authorities in Oklahoma.

The mere fact that the arrest may have been effected in the State of Oklahoma does not equate to a violation of the Fourth Amendment. *See e.g., Abbott v. City of Crocker*, 30 F.3d 994, 998 (8th Cir. 1994)(holding that, as a matter of law, an arrest in violation of state law does not necessarily constitute a violation of the Fourth Amendment); *United States v. Atwell,* ___ F. Supp. 2d ___, 2007 WL 140977, *11 (D. Md. Jan. 5, 2007)("[S]tanding alone, Sgt. Jackson's arrest of defendant outside of Fort Meade's territorial jurisdiction does not rise to the level of a constitutional violation); *Armstead v. Township of Upper Dublin*, 2004 WL 2743451 (E.D. Pa. Nov. 23, 2004)(Plaintiff's claim that his Fourth Amendment rights were violated when Officer Lebby arrested him outside of his primary jurisdiction fails to state a violation of a federal right); *Carter v. Bartle*, 1990 WL 156543 (E.D. Pa. 1990)(complaint alleging arrest outside primary jurisdiction failed to allege a constitutional violation unless arrest was without probable cause).

In this case, we do not believe there are any genuine issues of material fact as to the reasonableness of the extra-jurisdictional arrest. The officers were summoned to the property in response to Engleman's call for police assistance because of a prowler, Engleman provided an Arkansas address, Engleman used an Arkansas phone number, there was a warrant for Engleman's arrest, and the Arkansas police officers responded to the address provided by Engleman. It was not until the officers were attempting to arrest Engleman that there was any mention of the property being located in the State of Oklahoma.

With respect to the excessive force claim, Engleman has alleged Murray took the following actions: assisted in capturing Engleman; placed his knee in Engleman's back to handcuff him; and assisted in dragging Engleman out of the garage. *Addendum* (Doc. 7) at ¶ 1. "In addressing an excessive force claim brought under § 1983, analysis begins by identifying the

AO72A
(Rev. 8/82)

specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 394, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). "[T]he constitutional standard applied may vary depending upon whether the victim is an arrestee, a pretrial detainee, or a convicted inmate of a penal institution." *Andrews v. Neer*, 253 F.3d 1052, 1060 (8th Cir. 2001). In this case, Engleman was an arrestee. His claim is therefore analyzed under the Fourth Amendment reasonableness standard. *See e.g., Samuelson v. City of New Ulm*, 455 F.3d 871, 875 (8th Cir. 2006)(citation omitted).

In *Samuelson*, the court described the standard applied in analyzing such claims as follows:

> Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. [T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. To determine if the officers used excessive force, we pay careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. Reasonableness is determined from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. Additionally, [n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. Furthermore, our inquiry is an objective one, "without regard to [the officers'] underlying intent or motivation.

*Samuelson*, 455 F.3d at 875 -876 (citations and internal quotation marks omitted).

Here, Engleman concedes he attempted to hide from the officers and resisted their efforts to arrest him. *Resp.* at ¶ 22. Given this, some amount of force was reasonable to secure Engleman and place him in the car. *Cf. Wertish v. Krueger*, 433 F.3d 1062, 1067 (8th Cir. 2006)("[B]ecause some force was reasonably required to arrest and handcuff [the plaintiff], his

relatively minor scrapes and bruises and the less-than-permanent aggravation of a prior shoulder condition were *de minimis* injuries that support the conclusion that [the officer] did not use excessive force."); *Foster v. Metropolitan Airports Comm'n,* 914 F.2d 1076, 1082 (8th Cir.1990)(When an arrestee flees or resists, some use of force by the police is reasonable).

In responding to interrogatories, Engleman has stated he suffered no medical injury as a result of the use of force. In his addendum to the complaint, Engleman indicated he suffered a knot or bump over his right eye and another on his right knee. (Doc. 7) at ¶ 11. He needed no medical treatment for these injuries and the knots or bumps were gone within a week. *Id.* We believe the de minimis nature of the injuries suffered by Engleman preclude his excessive force claim. *Andrews v. Fuoss*, 417 F.3d 813, 818 (8th Cir. 2005)("Although we have remarked that it remains an open question in this circuit whether an excessive force claim requires some minimum level of injury, we have also held that a de minimis use of force or injury is insufficient to support a finding of a constitutional violation. . . . In this case, Andrews alleges at most very minor injuries, likely nothing more than the temporary and slight aggravation of pre-existing conditions [pain flare-up relating to pre-existing neck and back conditions that left Andrews with a sore neck and horrible headache]. These are precisely the type of de minimis injuries that preclude a claim for excessive force.")(citations and internal quotation marks omitted). *See also Crumley v. City of St. Paul*, 324 F.3d 1003, 1008 (8th Cir. 2003)("An 'actual injury' must be shown to support an excessive force claim under the Fourth Amendment.")(citation omitted).

Even assuming there was a constitutional violation with respect to the arrest or the use of force, there would be no basis on which to hold Sheriff Ferguson liable. As noted above, there is no respondeat superior or vicarious liability for an employee's unconstitutional conduct under

-11-

§ 1983. *See e.g., Grayson v. Ross*, 454 F.3d 802, 811 (8th Cir. 2006). Furthermore, there is no evidence Sheriff Ferguson tacitly authorized the alleged unconstitutional conduct or that Sheriff Ferguson failed to train his deputies and this failure amounted to deliberate indifference to Engleman's rights. *White v. Holmes*, 21 F.3d 277, 280 (8th Cir. 1994). Finally, there is no evidence that the Benton County Sheriff's Office had a policy or custom of making arrests outside their jurisdiction or of using excessive force during arrest.

## CONCLUSION

For the reasons stated, I recommend that the defendants' motions for summary judgment (Doc. 27 & Doc. 30) be granted and this case dismissed.

**The parties have ten days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 5th day of March 2007.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)