```
              IN THE UNITED STATES DISTRICT COURT
                 WESTERN DISTRICT OF ARKANSAS
                      FAYETTEVILLE DIVISION
```

STEPHEN JAMES ENGLEMAN                                          PLAINTIFF

        v.            Civil No. 05-5132

SHERIFF KEITH FERGUSON;
DEPUTY MURRAY; and
KEITH SMITH, Chief of Police,
Gentry Police Department                                       DEFENDANTS

## ORDER

NOW on this 28th day of March 2007, the above referenced matter comes on for consideration and the Court, being well and sufficiently advised, finds and orders as follows:

    1.   This matter was originally initiated by the plaintiff on July 27, 2005.

On June 28, 2006, separate defendants Sheriff Keith Ferguson and Deputy Murray, filed their **Motion for Summary Judgment (document #27).** And, on July 18, 2006, separate defendant Keith Smith filed his **Motion for Summary Judgment (document #30).**

To assist plaintiff in responding to the summary judgment motion, a questionnaire was propounded to the plaintiff (document #36). The plaintiff's response to the questionnaire was filed on February 21, 2007 as his response to the summary judgment motion (document #56); in addition, the plaintiff filed a supplemental response to the summary judgment (document #61) on March 1, 2007.

    2.   The **Report and Recommendation of the Magistrate Judge** (document #64 -- the "R & R") addressed the two summary judgment

motions and was filed on March 5, 2007. It further provided that "parties have ten days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1)."

3.  The plaintiff has filed several documents which this Court will consider objections to the R&R. Specifically, on March 13, 2007, Engleman filed document #67; also on March 13, 2007, Engleman filed document #68; and, on March 14, 2007, Engleman filed document #69.

4.  In this §1983 case, Engleman contends that his constitutional rights were violated when he was arrested in the State of Oklahoma, physically assaulted during the arrest, and then transported to the State of Arkansas. The R&R addresses both pending motions for summary judgment (documents #27 and 30); and, recommends that the pending motions should be granted and that this case should be dismissed. However, the Court, having reviewed Engleman's objections, finds that the R&R should be **adopted in part, and rejected in part** for the reasons stated below.

5.  As previously stated, currently pending before this court are motions for summary judgment filed by separate defendants Sheriff Keith Ferguson, Deputy Murray, and Keith Smith. The standard to be applied to a motion for summary judgment is set forth in Rule 56 of the Federal Rules of Civil Procedure and

provides for the entry of summary judgment on a claim

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

F.R.Civ.P. 56(c); *see also* Carroll v. Pfeffer, 262 F.3d 847 (8th Cir. 2001); Barge v. Anheuser-Busch, Inc., 87 F.3d 256 (8th Cir. 1996).  Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  Accordingly, all evidence must be viewed in the light "most favorable to the non-moving party."  F.D.I.C. v. Bell, 106 F.3d 258, 263 (8th Cir. 1997); *see also* Bailey v. United States Postal Service, 208 F.3d 652, 654 (8th Cir. 2000).

Where a movant makes and properly supports a motion for summary judgment, the opposing party may not rest upon the allegations or denials of its pleadings; rather, the non-movant must "set forth specific facts showing that there is a genuine issue for trial."  Liberty Lobby, 477 U.S. at 256.  The non-moving party must "make a sufficient showing on every essential element of its case for which it has the burden of proof at trial." Wilson v. Southwestern Bell Tel. Co., 55 F.3d 399, 405 (8th Cir. 1995).

      6.   For the purpose of considering the motions for summary judgment and based upon the pleadings submitted by the parties,

the Court believes the following material facts appear:

* On March 23, 2004, a warrant was issued for Engleman's arrest by a Bentonville District Court Judge for failure to comply. The warrant identified Engleman by name, social security number, date of birth, photograph, and listed his address as 24512 Van Fleet Road, Siloam Springs, Arkansas.

* On January 11, 2005, the Benton County Sheriff's Office received a call concerning a "prowler" at 24512 Van Fleet Road, Siloam Springs, Arkansas.

* Deputy Murray and a Gentry Police Officer responded to the call about the prowler. Engleman indicates there were also two other Benton County deputies present.

* Engleman's father was present at 24512 Van Fleet Road. The police officers searched the house for Engleman. At the time of the search, Engleman was hiding in a closet inside the garage.

* Engleman was arrested on the warrant issued on March 23, 2004, for failure to comply. Engleman maintains he was taken by force against his will, across the state line into Arkansas. Although the defendants indicate that Engleman was arrested at 24512 Van Fleet Road, Siloam Springs, Arkansas, Engleman contends this is simply a mailing address and that he was actually arrested at Route 1, Colcord, Oklahoma.

* Engleman was arrested on January 11, 2005, at 4:30 a.m. He was booked into the Benton County Detention Center at

approximately 5:16 a.m.  Upon intake at the Benton County Sheriff's Office, Engleman gave his address as 24512 Van Fleet Road, Siloam Springs, Arkansas.  Engleman indicates he told detention center officials that this was a mailing address and not a physical address.

   *   Engleman was the person who placed the call to 911 about a prowler on his father's property.  His father's telephone is assigned an Arkansas number of 479-524-4056.

   *   Engleman maintains the property, including the house, is located in the State of Oklahoma.

   *   As set forth in the filings of separate defendants Ferguson and Murray, "[a]ccording to a GPS map obtained by Benton County Sheriff's Office in conjunction with this Complaint, the house at 24512 Van Fleet Road is in the State of Oklahoma. However, the state line passes through the property in such a way that the mail box is in Arkansas.  The residents use an Arkansas address and have Arkansas driver's license and registration."

   *   Prior to Engleman's arrest, he attempted to hide from the officers and resisted their efforts to arrest him.  When the officers saw Engleman fleeing towards the back of the garage, he refused to comply with the officers' commands.

   *   Officers attempted to apprehend Engleman and in doing so sprayed him with pepper spray.  Engleman was taken to the ground and handcuffed.

\*      Deputy Murray was present but did not spray Engleman with pepper spray.  Murray transported Engleman to the Benton County Detention Center.

\*      Engleman does not contend that Sheriff Ferguson was present during the arrest or when he was booked into the Benton County Detention Center.

\*      Engleman does not know which Gentry police officer was present during the arrest.  However, he believes Police Chief Keith Smith should be liable for his officers.

\*      In his supplemental response to the summary judgment motion, Engleman points out that he was arrested in the Fall of 2003 by two Benton County deputies at his father's house.  He notes that the charges were ultimately dropped because it was confirmed that the property was located in Oklahoma.

\*      Engleman refers the court to the documents he filed with the court as supplements to his complaint.  These documents indicate Engleman was arrested on September 27, 2003, and charged with domestic battery 3, possession of drug paraphernalia, failure to appear, terroristic threatening, and false imprisonment. With the exception of the failure to appear and failure to comply charges, the remaining charges were ultimately dismissed in January of 2004.  It appears the dismissal was based on the fact that the actions on which the charges were based took place in Oklahoma.  The documents indicate that Engleman's attorney

confirmed with Ann Engleman that the farms were on the Oklahoma side of the line.

7. The Court will address the pending summary judgment motions separately with respect to each individual defendant.

**\*   KEITH SMITH**

Gentry Police Chief Keith Smith moves for summary judgment contending that there was no violation of the plaintiff's constitutional rights. Further, Smith argues that if a violation did occur, there is no basis on which he can be held liable. Finally, with respect to the excessive force claim, Smith contends Engleman's claim fails as a matter of law since Engleman suffered no actual injury.

"Liability under §1983 requires a causal link to, and direct responsibility for, the depravation of [constitutionally protected] rights." Madewell v. Roberts, 909 F.2d. 1203, 1208 (8th Cir. 1990). Accordingly, a "supervisor is not vicariously liable under 42 U.S.C. §1983 for an employee's unconstitutional activity." White v. Holmes, 21 F.3d 277, 280 (8th Cir. 1994). A supervisor is liable only if he "directly participates in a constitutional violation or if a failure to properly supervise and train the offending employee caused a deprivation of rights." Andrews v. Fowler, 98 F.3d 1069, 1078 (8th Cir. 1996).

The plaintiff has made no allegation that Keith Smith was at the scene of his arrest on January 11, 2005. Specifically, the

-7-

plaintiff stated that he does not know which Gentry police officer was present at the scene. Further, the plaintiff has made no allegation or contention that Keith Smith failed to properly supervise or train Gentry police employees which then resulted in a deprivation of rights. The plaintiff only argues that he believes that Chief Keith Smith should be liable for his officers.

Given these undisputed facts, the Court finds that Engleman's claims against Smith are subject to dismissal, and that Smith's **Motion for Summary Judgment (document #30)** should be **granted**.

**\*      SHERIFF KEITH FERGUSON**

Sheriff Keith Ferguson moves for summary judgment, also on the grounds that the plaintiff has suffered no constitutional deprivation. However, as with separate defendant Keith Smith, the Court finds that the claims against Sheriff Ferguson are subject to dismissal regardless of whether the plaintiff ultimately suffered a constitutional deprivation. As set forth above, a "supervisor is not vicariously liable under 42 U.S.C. §1983 for an employee's unconstitutional activity." White v. Holmes, 21 F.3d 277, 280 (8th Cir. 1994). A supervisor is liable only if he "directly participates in a constitutional violation or if a failure to properly supervise and train the offending employee caused a deprivation of rights." Andrews v. Fowler, 98 F.3d 1069, 1078 (8th Cir. 1996). Engleman does not contend that Sheriff Ferguson was present during his arrest or when he was booked into

-8-

the Benton County Detention Center. Further, Engleman does not allege that Ferguson failed to properly supervise or train his employees, and that he therefore, ultimately, caused a deprivation of constitutional rights. Engleman merely contends that Ferguson should be liable for the actions of his officers. For the reasons set forth above, **with respect to the plaintiff's claims against Sheriff Keith Ferguson**, the **Motion for Summary Judgment (document #27)** should be **granted**.

**\*     DEPUTY MURRAY**

With respect to separate defendant Deputy Murray, the plaintiff appears to assert two constitutional claims: a Fourth Amendment claim for violation of the right to be free from unreasonable searches and seizures; and, an excessive force claim.

**Excessive force**: With respect to the excessive force claim, Engleman has alleged that Deputy Murray took the follow action: assisted in capturing Engleman; placed his knee in Engleman's back to handcuff him; and assisted in dragging Engleman out of the garage. As set forth in the R&R, "[i]n addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." Graham v. Connor, 490 U.S. 386 (1989). "[T]he constitutional standard applied may vary depending upon whether the victim is an arrestee, a pretrial detainee, or a convicted inmate of penal institution." Andrews v. Neer, 253 F.3d

1052, 1060 (8th Cir. 2001). In this case, Engleman was an arrestee. Engleman's claim should therefore be analyzed under the Fourth Amendment reasonableness standard. *See e.g.*, Samuelson v. City of New Ulm, 455 F.3d 871, 875 (8th Cir. 2006)(citation omitted). Clearly, because Engleman attempted to hide from the officers and resisted their efforts to arrest him, some amount of force was reasonable to secure Engleman and place him in the car. *See* Samuelson, 455 F.3d at 875-876; Wertish v. Krueger, 433 F.3d 1062, 1067 (8th Cir. 2006); Foster v. Metropolitan Airports Comm'n, 914 F.2d 1076, 1082 (8th Cir. 1990). Further, given the minimal medical injury, if any, suffered by Engleman, summary judgment is appropriate with respect to Engleman's excessive force claim. Andrews v. Fuoss, 417 F.3d 813, 818 (8th Cir. 2005); Crumley v. City of St. Paul, 324 F.3d 1003, 1008 (8th Cir. 2003).

**Unreasonable search and seizure**: The Fourth Amendment of the United States Constitution protects against unreasonable searches and seizures. U.S. Const. Amend. 4. This includes the right to be free from arrest without probable cause. The reasonableness of a search or seizure under the Fourth Amendment is measured in objective terms by examining the totality of the circumstances. *See e.g.* United States v. Mendoza, 281 F.3d 712, 718 (8th Cir. 2002). Arrest pursuant to a valid warrant normally establishes probable cause for arrest. Luckes v. County of Hennepin, 415 F.3d 936, 938 (8th Cir. 2005).

In this case, Engleman was arrested pursuant to a warrant and he does not dispute the validity of the arrest warrant. Further, although Engleman agrees that the police were at his property in response to his report of a prowler, he contends that the officers were without jurisdiction to arrest him because he was physically in Oklahoma at the time the arrest was made. Engleman says that the officers were repeatedly told that they were in Oklahoma prior to the arrest. He also maintains that they should have been aware of the fact that the property was located in Oklahoma since criminal charges that were filed against him in Benton County in 2003 were dismissed because -- he says -- the actions on which the charges were based occurred on the property which was at the time shown to be in Oklahoma. Further, in response to an observation by the Magistrate Judge that Engleman offers no explanation for why he summoned the Benton County police to the property instead of calling the appropriate authorities in Oklahoma, Engleman states that he did *not* call the Benton County police, but instead called 911 and Benton County officers were simply the ones that answered the 911 call.

The R&R opines that "[t]he mere fact that the arrest may have been effected in the State of Oklahoma does not equate to a violation of the Fourth Amendment." *See e.g.*, Abbott v. City of Crocker, 30 F.3d 994, 998 (8th Cir. 1994). Based upon the reasoning of the Abbott case, the Magistrate Judge then concludes

-11-

that there are no "genuine issues of material fact as to the reasonableness of the extra-jurisdictional arrest."

This Court is not persuaded and believes that <u>Abbott</u> is distinguishable on the facts of this case.

In <u>Abbott</u>, the plaintiff brought suit for violations of his Fourth and Fourteenth Amendment rights based upon the alleged use of excessive force and alleged unauthorized arrest.  The claim of unauthorized arrest stemmed from an arrest made by a municipal police officer while outside the city limits -- and in the jurisdiction of the county sheriff's department.  It was undisputed that such an arrest was unauthorized by state law. Nevertheless, a panel of the Eighth Circuit Court of Appeals held that the court below "erred in determining, as a matter of law, that the arrest in violation of state law necessarily also constituted a violation of the Fourth Amendment." <u>Abbott</u>, 30 F.3d at 998.[1]

In <u>Abbott</u>, the late Richard S. Arnold, then Chief Judge of the Eighth Circuit Court of Appeals, issued a separate opinion, concurring in part and dissenting in part.  Specifically and significantly, Judge Arnold dissented with respect to the issue at bar, finding that "even though a violation of state law in the

---

[1] The Court in <u>Abbott</u> noted "the existence of some inconsistency in the rulings of the Circuit on this issue." <u>Abbott</u>, 30 F.3d 998, FN3.  See <u>Bissonette v. Haig</u>, 800 F.2d 812, 816 (1986); <u>Cole v. Nebraska State Board of Parole</u>, 997 F.2d 442, 444 (8th Cir. 1993).

course of an arrest is not a per se constitutional violation, it can be 'unreasonable' under the Fourth Amendment, depending on the nature of the violation." Id. at 1000.  Under the circumstances of Abbott, Judge Arnold reasoned:

> Perhaps the most important reason why a state might limit the jurisdiction of city and town officers to their respective communities is that smaller communities are unlikely to have the resources to provide their officers with proper training in the elements of probable cause or arrest procedures.  By limiting an officer's jurisdiction to the community in which she serves, a state helps ensure not only that the power of the police over individuals will be appropriately restricted, but also that an officer will be sufficiently trained for the types of arrests likely to occur in her community.  This type of restriction helps to protect the very interests underlying the Fourth Amendment, those of the individual in privacy and personal freedom, and, at the same time, balances the interests of government in protecting society and making arrests in a safe, efficient, and constitutional manner.  For these reasons, I would hold that the violation of state law in this case made the arrest unreasonable under the Fourth Amendment.

Abbott, 30 F.3d at 1000.

Similarly, in Cole v. Nebraska State Board of Parole, a separate panel of the Eighth Circuit analyzed an arrest conducted by a parole supervisor.  997 F.2d 442 (8th Cir. 1993).  In that case, the Court found that under Nebraska law "a warrantless arrest of a parole violator is lawful only if the parole officer 'has reasonable cause to believe that a parolee . . . will attempt to leave the jurisdiction or will place lives or property in danger . . .'" Id. at 444.  There was no basis to believe that the parole officer had reasonable cause to hold such a belief; and,

-13-

subsequently, the Court concluded that "[a]n arrest by a state actor that is not authorized by state law is actionable under § 1983 as a seizure contrary to the Fourth Amendment." *See* Bissonette v. Haig, 800 F.2d 812, 816 (8th Cir. 1986); United States v. Rambo, 789 F.2d 1289 (8th Cir. 1986).

Based upon the above cited case law, this Court believes that if, in fact, the arrest in question in this case was accomplished in the State of Oklahoma -- by Arkansas police officers acting pursuant to an Arkansas warrant -- it was not authorized by the laws of either the State of Arkansas or the State of Oklahoma. If that should prove to be the case, then it would appear that plaintiff can and does state a viable claim under § 1983 and the Fourth Amendment which would withstand a summary judgment challenge. At this point, the Court believes material questions of fact remain in dispute -- as to whether the arrest was, in fact, accomplished in Oklahoma and whether there are any other relevant facts which would inform the Court as to whether **Abbott** or **Bissonette**, and its progeny, should control.

As the matter now stands, there is evidence from which the Court could conclude that the arrest occurred in Oklahoma and, therefore, that it was not authorized by applicable law. However, there is also evidence which might show that the arrest occurred in Arkansas since both an Arkansas address and an Arkansas phone number are associated with the premises on which Engleman was

arrested.

Before addressing this issue further, the Court is obliged to discuss another preliminary issue which, because of the ultimate recommendation made on the unlawful arrest claim, was not addressed by the Magistrate Judge.

Deputy Murray argues that even if a constitutional claim has been stated, he is entitled to qualified immunity in this case. According to the United States Supreme Court in <u>Harlow v. Fitzgerald</u>, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  457 U.S. 800, 818 (1982).  Where a defendant seeks qualified immunity, a ruling on that issue should be made so that the cost and expenses of trial are avoided where the defense is dispositive, <u>Saucier v. Katz</u>, 533 U.S. 194 (2001), because qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985).  The privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial."  <u>Id</u>.  According to the Eighth Circuit Court of Appeals, qualified immunity triggers a three-prong inquiry:

> (1) whether the plaintiffs have asserted a violation of a constitutional or statutory right; (2) if so, whether

-15-

> that right was clearly established at the time of the violation; and (3) whether, given the facts most favorable to the plaintiffs, there are no genuine issues of material fact as to whether a reasonable official would have known that the alleged action violated that right.

Burnham v. Ianni, 119 F.3d 668, 673 -674 (8th Cir. 1997)(en banc).

As discussed above, if the arrest actually occurred in Oklahoma the plaintiff has asserted a violation of a constitutional right. The right to be free from an unreasonable seizure was clearly established at the time of the violation; and, there is no question that a reasonable official would know that an unauthorized arrest – i.e., an arrest by a police officer outside of that police officer's jurisdiction wherein he is commissioned and authorized to act -- would amount to a violation of an individual's right to be free from unreasonable seizure. For those reasons, the Court finds that Deputy Murray is not entitled to qualified immunity and that, with respect to the plaintiff's claim for unreasonable seizure, the Motion for Summary Judgment (doc. #30) should be denied.

IT IS THEREFORE ORDERED that the **Report and Recommendation of the Magistrate Judge (document #64)** is **adopted in part and rejected in part**, and, in accordance therewith, the Court finds that:

1. the **Motion for Summary Judgment (document #27)** of separate defendants Sheriff Keith Ferguson and Deputy Murray

should be **granted in part, and denied in part, as follows:**

*   with respect to all claims against Sheriff Keith Ferguson, the motion is **granted;**

*   with respect to the excessive force claim against Deputy Murray, the motion is **granted;** and,

*   with respect to the unreasonable seizure claim against Deputy Murray, the motion is **denied.**

2.  the **Motion for Summary Judgment (document #30)** of separate defendant Keith Smith should be **granted.**

**IT IS SO ORDERED.**

    /s/ Jimm Larry Hendren
    JIMM LARRY HENDREN
    UNITED STATES DISTRICT JUDGE